The next matter, number 22-1536, Lynn M. Sheridan, et al. v. Centerra Group, LLC. At this time, would counsel for the appellants please introduce themselves on the record to begin. Yes, please, court. On behalf of the appellants, my name is Jose Javier Calvadillas, co-counsel of Marla Lopez, and as you saw in the report below, he's not here present, but I'll be chatting back for him as well. Your Honor, this case involves an ADA discrimination case involving a type 1 diabetic that used to be a security guard for Santa Fe who was a federal contractor in charge of the security in the legal coast guard base over in Andalavina, some of the western side of the island. As fully addressed in our brief, this case presents various matters regarding the ADA involving the Interactive Dialogue and Multifashional Legal Accommodation for XY employees. It also involves certain violations to the law that was committed by Centerra, particularly and most importantly, is the fact that as a result of this diabetic condition, Mr. Rios was required to monitor his blood glucose levels at certain amounts of times a day, and this was well known by Mr. Carlton Carballo, who was the chief at the Centerra outfit, as well as his two supervisors, and he was afforded a private place to monitor his blood glucose at X amount of times a day. And allegedly, he was using this private rest area, which also included a bathroom, and when he came out of the room, using the bathroom and also monitoring his blood sugar, one of the supervisors understood that he had been sweetened, and he had lodged it and claimed that he was unaware of it. Well, I'm not aware of it, but I'm sure it's changing wherever I'm at. Counsel, can I ask you to just turn to the termination when you cross his job? One specific question that I have for you, because the brief talked about your client going into hypoglycemic shock under a serious condition of risk. Does the record reflect any evidence introduced by your client that that is what happened, that he had hypoglycemic shock, because your closing counsel says there is no such evidence in the record. So could you just address that very specifically? There is no—to answer your question, Your Honor, there is no medical evidence as to the fact that he went into hypoglycemic shock. He was just as a diabetic. He had been through that before. And then when he went into that state, his blood sugar dropped dramatically. He just passed out, and then his supervisor, who also our client claims had been hounding him based on other violations of the ADA, just such as he was not allowed to consume snacks during his meal period. He—well, no, I did not cause sleep. I just had a hypoglycemic shock. I thought he said he was reading. Didn't he tell his supervisor he had been reading? Did the plaintiff not tell his supervisor that he had been reading? Yes, I understand that during the deposition he was asked that. He had something in his hands that he was reading, and that's where he had the station of the post. That's where he had the hypoglycemic blood sugar drop, and that's why he passed out. But he didn't tell his supervisor. That's the point. He said that he told his supervisor he was reading, not that he was suffering from a medical condition. Well, he had been reading, and then he had this hypoglycemic shock, and that's why he informed his supervisor, no, I did not cause sleep. But counsel, just in terms of what the employer knew at the time, because that's obviously very important to have a basis for the decision to terminate, Sentara's counsel says that your client never told anyone at Sentara in that moment or as they were investigating what happened in February. He never told anyone that what had happened was that he had a hypoglycemic shock. He just didn't say that to anyone, and it's just come up now in the briefing. So can you address that? I understand that that particular point was asked during his deposition. No, I'm not talking about his deposition. I'm just saying is there any evidence in the record that at the time he was found, in what the supervisor just said he was sleeping in February at that time, is there any evidence in the record that he told anyone at Sentara that when it actually happens that he had a hypoglycemic shock? Well, if I understand that when the supervisor confronted him, he told him, no, I did not fall asleep, I have hypoglycemia. Where is that in the record that he told the supervisor? That's on the deposition record, but I'm not saying that. And Sentara also further knew from day one when he had his first – it wasn't a job interview, it was a job orientation. He informed his captain in Colorado of all his conditions involving that arose from his diabetic condition, his neuro – neuro – neuro – neuro – oh, my God. Neuropathy. There you go. Sorry, that's a tongue twister. And also how that affected his ability to walk larger distances as compared to the other single-situated security guards. And there's also evidence, you know, that he was treated differently from other non-disabled security guards, specifically to the point that there's another employee whose name is Heriberto Gonzalez, that he, according to testimony of a client, that he had been admonished on two periods of occasions for falling asleep. One was one who was reprimanded, and the other one for falling asleep at the same time was suspended. But counsel, wasn't that hearsay? So I think the district court can't consider hearsay evidence. It's under judgement. Well, I don't think it's hearsay. I see that the appellant knew of this fact, and he had talked about it in the workplace, and he knew that this had happened. But he didn't have personal knowledge of that. I don't think so. That's the only reason. Counsel? Yes. Counsel? Yes. A colleague is trying to ask you a question. I'm sorry. Yes. He didn't have personal knowledge, so the only reason it could not be hearsay is that you somehow come up with a hearsay exception. So what would be the hearsay exception? Well, Your Honor, to be frank with you, I don't know if it is hearsay, and I don't know what other exception you would apply to the hearsay rule. I just think that it just goes to the fact, Your Honor, that there were similarly situated employees that were treated differently. You need evidence. You need admissible evidence of those comparatives. Yes, Your Honor, that's correct. And presumably you knew before the complaint was filed that you would need such – to look for such evidence. Yes. And then we get to the filing of the motion for summary judgment, and the plaintiff says, I can't respond yet. I need to do discovery on comparatives. Yes. That was on Rule 56. How is that not a – how does the district court abuse its discretion by saying, in effect, you've had plenty of time to do all this already? The comparative evidence that we sought prior to the filing of the motion for summary judgment, that information is not provided, and that's why we informed the court. Nor was there a motion to compel filing. Nor was there a motion to compel filing. That's correct, Your Honor. No motion to compel was filed. It was informed to the trial court, and this is where it was painted. What was the – my understanding is by the time the Rule 56 motion is filed, the discovery had been closed for about two and a half months. So just to follow up on Judge Hamilton's question, what was – was there any basis for the delay in filing that motion? No, Your Honor. There's no – on the record, there is none. When the motion for summary judgment was filed, we immediately requested, after requesting an extension of time to respond. That is when the Rule 56 motion was filed. No, my question is why wasn't the request for that evidence filed two and a half months earlier before discovery closed? Well, Your Honor, to be honest, I don't think it – it wasn't. It was not filed after discovery. It was filed after discovery. Why? Do you know why? No, Your Honor. I really don't know. And the issue is, Your Honor, if we understand discovery matters aside, there's discovery – I mean there was issues of fact. The employee claims he was – he had had a diabetes shot. And the supervisor claims he was keen. That's an issue of material fact. And I understand that it should be – some injury should be indicted. And the case should be submitted to the jury for – for determination. Thank you, counsel. At this time, counsel for the appellee, please introduce yourself on the record to begin. Good morning, Your Honor. Thank you for your support. My name is Juan Felipe Santos from Jackson, Louis, on behalf of Sentera Group Defendant Appellees in this case. Your Honor, I would like to start talking about the incident about the termination and a parent's allegation that that was a credibility determination to be made by the district court. And the problem with that is that when Sentera concluded that Rios fell asleep at work, that was not a credibility determination, but a reasonable conclusion based on the information the company had at the time of the event and considering that falling asleep while on duty merits immediate termination as per the company's administration of conduct standard operating procedure. Well, is there anything in the record to the effect that he told the company at some point that he was suffering from hypoglycemic shock? No, he never did. The record shows otherwise. Well, what about his deposition as a counsel for us? I didn't remember that in the deposition. The first time that hypoglycemic – the word – the term hypoglycemic shock was used in this case was in the complaint. The second time it was used, it was in the deposition. Not even at the EOC level, not even when the investigation was conducted in the company, he never raised an issue of hypoglycemic shock. In fact – But does his deposition say he so advised your client that that is what was going on when that incident of sleep, so-called sleeping, occurred? Well, no. In the deposition, although he mentions the word hypoglycemic shock, he did admit during the deposition that in that day when he was confronted by Lieutenant Lopez, what he said is that he dozed off because he felt dizzy. That's what he admitted during the deposition. So that's the whole sum of his deposition testimony? That's the whole sum of his deposition testimony, which is consistent of what he said both verbally and in writing during the investigation. He didn't use the word hypoglycemic, but what about his exchange in emails with Mr. Caraballo? He didn't mention anything that relates to hypoglycemic. He just mentioned that he felt dizzy. I'm going through health changes. I dozed off and felt dizzy. I did not have time to reach out for help. Is that enough of a signal of a health issue? That's not enough on the first day of deposition. The fact that an employee mentions that he suffers from a condition is not enough to trigger any obligation under the NDA. In fact, evidence of a medical diagnosis of impairment without more is insufficient to prove a disability. So, no, that was not enough. And it's his obligation to seek for help and ask the company specifically if he needed any accommodation. It was his obligation to do so. He never requested an accommodation. In fact, his failure to accommodate the claim is premised on several wrong assumptions. The first one being that his doctor never recommended that either that he eat every certain amount of time because he admitted that his doctor never recommended that. And second, there is no evidence in the record as well that he was suffering from hypoglycemic shock or that the company needed to do something about it. The second is that he also admitted that he never requested any such accommodation. And at the end of the day, even if he did, the record does show that the only accommodation that he would have asked is to eat every two hours. And he kept eating during his whole talk without being bothered. And that's also his admission. In fact, the person that supervised him on the day of the events was Lutinan Lopez. And according to plaintiff's testimony, Lutinan Lopez allowed him to consume snacks and would send him to buy snacks and consume on the post. That was the person that also supervised him on that same day of the events, who went an hour before and asked him if everything was OK. And when he found him, you know, because he stood in front of the gate watching clearly through the glass, he saw him sleeping. When plaintiff realized that Lutinan Lopez was right in front of him, that he woke up surprisingly, Lutinan Lopez asked him if he was OK, and he responded that he was OK. He said, I was reading. He said, I was writing. And he also mentioned on that at that same moment. According to the record and in writing that and he wasn't on controversy, he wasn't controverted by plenty. Why am I going to lie? Yeah, I fell asleep. I got so much going on. So now I get fired. I've been fired from better places before. That's on the record. That's part of the investigation. He never he never. On contrary to that, in fact, that same day, there was also a meeting between Lutinan Lopez, Luis Pedro, which was a union, right? Plenty was a unionized employee. And during that meeting, he also admitted to falling asleep. As a result of that, Captain Caraballo, that same day, asked Plaintiff by email. Isn't it true that you said that you admitted to falling asleep during the meeting with Luis Pedro and Lutinan Lopez? Please confirm. So in right to which he responded that same day. He responded, yes, I have been dozing off after feeling sick and dizzy to both gentlemen. He never mentioned anything related to any medical condition. I'm looking. I'm looking at his email from February 26. Rios to Caraballo. They just said 672. And I agree with you about it. I felt sick while on duty to reach out to superiors. My health issues and changes within seconds. I sometimes can tell when my sugar levels drop. In this case, I didn't have a chance to until we saw. Thank you so much. That's OK. That's what you want, right? OK. But why is that enough to indicate that he dozed off? Well, that's well, that's not enough, because as we mentioned, he never raised it before. And at that moment, when the investigation was conducted, nothing was the fact that he was that we knew that he had diabetes. The fact that he has diabetes doesn't mean that he's going to suffer from hypoglycemia. I never mentioned that. And so if he if he if he, according to the record, if he admitted to Lieutenant Lopez that he fell asleep and then to respect you, Lieutenant Lopez, again, fell asleep. And then when he tried to confirm so in writing, he didn't mention anything that you were like hypoglycemia or anything to that effect. He just mentioned that he dozed off. But he's writing at that moment. And according and for us, it's based on the investigation conducted by Captain Caraballo, according to Mr. Rios, it's very impartial person, Mr. Caraballo. In fact, this is another inference that there is no discriminatory animus because according to the same actor inference, Captain Caraballo was the one that recruited him five months earlier. And according to Planted, he disclosed all his medical conditions during the job interview prior to recruiting. So according to such inference, there is no discriminatory animus when the same pirate is the same pirate. And so when he was terminated only five months after his important termination, there are cases that goes as far as two years. Why that same inference? Sorry, I didn't expect the same actor inference to come up. I don't know if I'm personally involved. Yeah. So we treat that as a jury question. But it seems to me that you're also arguing, if I recall from your brief, that in essence, if you've got a security guard who has diabetes that is not sufficiently controlled, that he is not qualified to perform essential functions in his job as a security guard. No, that's not what we what we elect, Your Honor. What we're saying is that according to Planted, he is the one alleged. We're assuming as true that he suffers from hypoglycemic shock when there is no medical happiness, even though there is an ADA claim. We're assuming as true that he is he suffers from hypoglycemic shock that makes him doze off into unconsciousness. That's his allegation. So we say that if that's true, then he's not a qualified individual under the ADA. So he's not protected because certainly staying awake is an essential function of the job. So if he. Is that different from what I just asked you? Well, if he suffers from hypoglycemic shock, that drives him into an unconscious state. So assuming that is true, then he may not be a qualified individual under the ADA. Isn't that possible with every person who has diabetes? Are you arguing that people with diabetes are never qualified? I don't understand that argument. No, Your Honor, with all due respect, I'm not arguing that. I'm just saying that not all diabetes suffer from hypoglycemic shock. One thing does not go with the other. In fact, the people that suffer from hypoglycemic shocks are the ones that typically have an insulin treatment. Plankton doesn't have an insulin treatment either. And in the record, in the medical record, there has never been any hypoglycemic shock except for his own cell diagnosis. In this case, after the lawsuit was filed. Prior to that, or even the medical record, that's why the case record in this case, the record is devoid of any medical evidence supporting any hypoglycemia condition or suffering as a result of diabetes. He never put the company on notice of such conditions. Let me just ask you a different question about the accommodation point. He has a conversation over the phone with someone from HR and a supervisor at Sentara and shares all of his medical conditions with them. And then there is an obligation to engage in an interactive process. Isn't your position that just leaving a form in a public place fulfills an employer's obligation to engage in an interactive process after an employer has shared conditions that qualify as disabilities? You can just leave a form somewhere and that's it. That's all the employer owes. Well, Your Honor, although he did disclose medical conditions during that meeting, he admitted that he never requested accommodation. What we did is just, he said that he, we sent him, we told him that we were going to leave a form to his doctors that we knew what was going on with him because he kept saying that in that meeting that he had some conditions. But again, according to First Circuit precedent, just mentioning that I have a condition doesn't mean that you're entitled to an accommodation. We were not going to notice what was a specific request he was making. So as a result of that, we did end up telling him, you know, you have to go to your doctor. We're going to communicate with him, but he failed to engage in that. It's a two-way conversation. So you're arguing that the interactive process just hasn't begun. There was no obligation on you yet because he hadn't specifically requested a particular accommodation. That's true, although we, although at that moment we told him that he needed to fill out a form so that we could certainly engage with that process and certainly find accommodation if anything was to be given to him. But again, you know, the accommodation he was requesting, according to him, to his allegations, was not an accommodation ever recommended by any doctor. Thank you. Thanks. Thank you, counsel. That concludes argument in this case.